IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Antrell Jermaine Fordham, #262332 )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Dr. John Pate, )<br>)<br>Defendant.[1] )<br>) | Civil Action No.8:08-4110-CMC-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The Plaintiff, a state prisoner, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the Defendant's Motion for Summary Judgment (Dkt. # 24) and the Plaintiff's Motion to Compel (Dkt. # 33).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The Plaintiff brought this action on December 18, 2008, seeking damages for alleged constitutional violations.[2] On April 9, 2009, the Defendant filed a Motion for Summary Judgment. On April 10, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 22, 2009, the plaintiff filed a response opposing the Defendant's Motion for Summary Judgment.

---

[1] The undersigned notes the Defendant Dr. Edward Stahl, Jr., died during the pendency of this action (Dkt # 41) and was terminated as a defendant in this action on September 15, 2009, by stipulation of the parties (Dkt. # 48).

[2] This date reflects that the petition was date stamped as having been received on December 18, 2008, at the Lee Correction Institution mailroom. (Compl. Attach. # 2.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

## I. **FACTS PRESENTED**

The Plaintiff is an inmate within the South Carolina Department of Corrections ("SCDC") currently incarcerated in the LCI. In his complaint, he alleges claims of discrimination, neglect, deliberate indifference to medical needs. (Compl. at 2.)

The Plaintiff alleges that on April 24, 2007, he began to experience stomach pains and vomiting after eating certain foods. (Compl. at 3.) He states he was seen by medical personnel at the LCI and after he tested positive for the bacteria Helicobacter Pylori ("H-Pylori"), he was diagnosed with a peptic ulcer. He states he was given medicine, but the pain continued. *Id.* He states that he sent the Defendant Dr. John Pate a request to staff informing him that the treatment had failed, but Dr. Pate did not respond. *Id.*

He alleges he began having problems with his food again almost a year later on April 10, 2008. *Id.* He was seen on April 16, 2008, and he was told that an appointment for him would be scheduled with the doctor. *Id.* He states he saw Dr. Pate on April 23, 2008, and Dr. Pate prescribed medication and ordered blood tests, x-rays, and an ultrasound. He states he took all the medications as prescribed but he was still unable to eat. (Compl. at 3.) He states he underwent tests at ImageCare on June 6, 2008, and the results came back on June 16, 2008. He states he saw Dr. Pate on July 9, 2008, and Dr. Pate went over the test results with him. (Compl. at 3.) He alleges that Dr. Pate stated that nothing was found which could be causing the Plaintiff's symptoms. *Id.* He states that Dr. Pate prescribed more medication and told him that he had peptic ulcers. The Plaintiff alleges he took the medication, but there was no change. He states that he signed up for sick call on September 26, 2008, and another H-Pylori test was run.

He alleges that he saw Dr. Edward Stahl on October 17, 2008, and told him that he had not eaten in two weeks. He told him he could not eat rice, pasta, grits, cabbage, string beans, squash, or black-eyed peas. (Compl. at 3-4.) He states that Dr. Stahl stated the H-

2

Pylori test had come back positive and Dr. Stahl prescribed the same medication as before. He states he took all the medication without any relief. (Compl. at 4.)

The Plaintiff states that on November 12, 2008, he filed a sick call request and was seen by Nurse Brown on November 13, 2008. He states that he told her he could not eat certain foods and she told him he would never be able to eat those foods again even with the medication. He asked to be tested for stomach cancer and she told him a doctor's appointment would be scheduled. He states he did not see the doctor and he filed another request for sick call. He saw Nurse Pratt and she also told him a doctor's appointment would be scheduled, but by November 20, 2008, he had not seen a doctor and so he filed a grievance. The Plaintiff alleges that Nurse Pratt told him that the doctor had written in his records that nothing further would be done for the Plaintiff's stomach problems.

The Plaintiff alleges failing to give him further treatment for his stomach ailment is neglect, discrimination, and deliberate indifference. (Compl. at 4.) The Plaintiff alleges he is in chronic and serious pain, losing weight and weak all the time. (Compl. at 5.) He is seeking actual, nominal, and punitive damages. *Id.*

In subsequent filings with the Court, the Plaintiff clarifies that he is seeking to raise only claims regarding the denial of medical treatment after October 17, 2008. (Dkt. # 31 - Pl.'s Mem. Mem. Opp. Summ. J. Mot. ¶ 1; Dkt. # 33 - Pl.'s Motion for Supplements at 1.) In a memorandum filed April 22, 2009, he states that "no where in [his] medical records does it show that [he has] seen a doctor after 10-17-08 as [he has] requested numerous times." (Dkt. # 31 - Pl.'s Mem. Mem. Opp. Summ. J. Mot. ¶ 7.)

## II. **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252.

4

Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

The Plaintiff alleges he has been denied medical treatment at LCI. The Defendant contends that the Plaintiff did not exhaust his administrative remedies and has failed to state a claim of medical indifference. The undersigned agrees.

**Exhaustion**

The Defendant contends that, although the records indicate that the Plaintiff did attempt to file a grievance on this claim, the Plaintiff did not exhaust all of his available administrative remedies prior to the filing of his lawsuit. The Defendant notes that in the complaint, the Plaintiff indicates that did not receive a response to his grievance prior to filing this action. The Plaintiff alleges he has been denied medical care beginning on October 17, 2008. He alleges he filed a Step 1 grievance on November 11, 2008, Grievance # 3383-08. (Dkt. # 31 - Pl.'s Mem. Opp. Summ. J. at 1-2.) The Plaintiff alleges he did not receive a response and so he filed this action on December 18, 2008. (Compl. at 2.)

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. Recently in *Woodford v. Ngo*, \_\_\_ U.S. \_\_\_,

126 S. Ct. 2378, 2386, 165 L.Ed.2d 268 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that the agency holds out, and doing so properly." *Id.* (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id.*

The Court takes notice that to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five days of the receipt of the response from the Warden. A responsible official has sixty days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. "If at the institutional level, the response to the grievance exceeds the established time limits, the grievance will automatically proceed to the next level of appeal." SCDC Policy GA-01.12 § 13.5. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983. 42 U.S.C. § 1997e. *Penny v. McBride,* 2009 WL 1346126 (D.S.C. 2009). Furthermore, it is strictly enforced that exhaustion is a prerequisite to suit and must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005)

Here, the Plaintiff did not exhaust his administrative remedies prior to filing this action. Although the Plaintiff appears to argue that his failure to exhaust his administrative remedies should be excused because the Defendants did not timely respond to his Step 1 grievance, this argument fails.[3]  As noted above, the Plaintiff alleges he filed a Step 1 grievance on November 11, 2008, Grievance # 3383-08, and he filed this action on December 18, 2008.[4]  The Plaintiff filed this action before the forty days within which the Warden had to respond had lapsed.

Even assuming the forty-day time period for a response had lapsed, when an inmate has not received a response to a Step 1 grievance, he must either file a Step 2 grievance, or wait approximately 114 days from presenting his Step 1 written grievance to the prison to file a complaint in federal court. *Randolph v. Joyner,* 2006 WL 2459482 (D.S.C. 2006); *Finch v. McCormick Correctional Inst.,* 2008 WL 2076673 (D.S.C. 2008)(holding that "[e]ven if SCDC fails to respond to the plaintiff's Step 1 grievance and, as a result, leaves the plaintiff with no decision to appeal to Step 2, the plaintiff must still refrain from filing suit in federal court until all time periods for both steps to be completed have expired."). Accordingly, the Defendant should be granted summary judgment based upon the Plaintiff's failure to exhaust his administrative remedies. Alternatively, the undersigned recommends that the Defendant be granted summary judgment on the merits as discussed below.

---

[3]The Plaintiff's argument that the Defendants had only nine days to respond to his Step 1 grievance is misplaced.  The Court may take judicial notice of SCDC Policy GA-01.12 as  noted in *Jones v. Kay,* 2007 WL 4292416 (D.S.C. December 05, 2007). Pursuant to this policy, the Warden or his designee has nine working days to enter a Step 1 Grievance into the SCDC's automated system and forty days to respond to the grievant in writing. Thus, the Defendants actually had forty days, not nine, to respond to the Plaintiff's Step 1 grievance.

[4]The Plaintiff also filed a Step 1 grievance on November 21, 2008, to which he received a response on January 26, 2009.  (Dkt.# 25 - Attach. 2.)  Again, however, the Plaintiff filed this action before the forty-day response time had run.

7

**Medical Indifference Claim**

The Plaintiff alleges he has been denied medical treatment. The Defendant contends the Plaintiff has failed to state a claim. The undersigned agrees.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard. In *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

8

The Plaintiff's medical records establish that he was seen on numerous occasions by medical staff at the LCI for treatment of his stomach condition. The Plaintiff was diagnosed with an H. Pylori infection in April 2007. (Dkt. # 24 - Def. Pate's Mem. Supp. Summ. J. Ex. A - Pl.'s Med. Records at 18.) From April 2, 2007, through January 27, 2009, the Plaintiff was seen, evaluated and/or treated by medical personnel at least thirty-seven times for his stomach pains. He has been prescribed various medications and nutritional supplements, ultrasounds and barium swallow tests with contrast, and been referred to outside medical specialists for evaluation and treatment as necessary and for additional tests and lab work.

As noted above, the Plaintiff has clarified that he is only seeking to raise claims regarding a denial of medical treatment after October 17, 2008. (Dkt. # 31- Pl.'s Mem. Mem. Opp. Summ. J. Mot. ¶ 1; Dkt. # 33 - Pl.'s Motion for Supplements at 1.) Further, the Plaintiff states that "no where in [his] medical records does it show that [he has] seen a doctor after 10-17-08 as [he has] requested numerous times." (Dkt. # 31 - Pl.'s Mem. Mem. Opp. Summ. J. Mot. ¶ 7.)

The medical records, however, do not support the Plaintiff's allegations that he has not received any medical treatment since October 17, 2008. (Dkt. # 24 - Def. Pate's Mem. Supp. Summ. J. Ex. A - Pl.'s Med. Records 4-13.) The Plaintiff's medical records establish that the Plaintiff has been treated numerous times since October 17, 2008. He has been prescribed supplemental shakes, pain relievers, and antibiotics and he underwent surgery to repair a inguinal hernia in February 2009. Further, on January 22, 2009, Dr. Stahl ordered treatment for the Plaintiff for another recurrence of the H. Pylori. (*Id.* at 6.) On February 7, 2009, the Plaintiff's request for additional supplemental shakes was denied

9

because his BMI at that time was determined to be 23, which was noted "to be well within the healthy range." (*Id.* at 4.)[5]

While Plaintiff may disagree that his medical diagnosis and treatment were adequate, this disagreement does not rise to the level of a constitutional question or violation. *See Wright,* 766 F. 2d at 849. Negligence or malpractice in medical services does not create a constitutional cause of action. *Wright,* 766 F.2d at 849. Moreover, medical malpractice would not become a constitutional issue merely because the plaintiff is a prisoner. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

Here, viewing the evidence in the light most favorable to the Plaintiff, the Court simply cannot find that the Defendants' treatment of the Plaintiff was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Estelle,* 429 U.S. at 105.

Moreover, the undersigned also notes that the Defendant Pate appears to not have been personally involved in the alleged refusal of medical treatment after October 17, 2008. The Plaintiff alleges Dr. Stahl refused to provide further treatment for the Plaintiff's ulcer. The Plaintiff does not allege any personal involvement by the Defendant Dr. Pate. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh,* 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each

---

[5]The Plaintiff's BMI may have been incorrectly calculated. At one point in his medical records, his height is listed as 6'1" (Dkt. # 24 - Def. Pate's Mem. Supp. Summ. J. Ex. A - Pl.'s Med. Records at 13.) However, at numerous other places he is listed as being 5'10". (*Id.* at 4; 11; Dkt. # 27 - Pl.'s Med. Records at 21; Dkt. # 27 -1 - Pl.'s Med. Records at 16.) Further, the Plaintiff is listed as being 5'8" in the SCDC website. SCDC Homepage at https://sword.doc.state.sc.us/incarceratedInmateSearch/index.jsp. *See In re Katrina Canal Breaches Consolidated Litigation*, 2008 WL 4185869 at * 2 (E.D.La. September 8, 2008) (noting that courts may take judicial notice of governmental websites). The Plaintiff claims he is 6'1". (Dkt. # 22.) Even assuming the Plaintiff's BMI was incorrectly calculated, this would be simply be a claim of negligence, not deliberate indifference.

10

defendant which violate his constitutional rights. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3rd Cir.1988). Some sort of personal involvement on the part of the Defendant and a causal connection to the harm alleged must be shown. *See Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986). In this case, the Plaintiff does not allege that the Defendant Dr. Pate was personally involved in any violation of his constitutional rights. Accordingly, the Defendant Dr. Pate's motion for summary judgment should be granted.

**State Law Claims**

To the extent that the Plaintiff states additional claims under state law, i.e. medical malpractice or negligence, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

## **CONCLUSION**

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendant's Motion for Summary Judgment (Dk. # 24) be GRANTED and the Plaintiff's Motion to Compel (Dkt. # 33) be DENIED.

IT IS SO RECOMMENDED.

                                                  s/Bruce Howe Hendricks
                                                  United States Magistrate Judge

October 6, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).